UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TIFFANY SHARAE THREATT,

                                                                              **DECISION AND ORDER**

                                            Plaintiff,                          19-cv-00025(JJM)

v.


COMMISSIONER OF SOCIAL SECURITY,

                                            Defendant.

_____

                This is an action brought pursuant to 42 U.S.C. §1383(c)(3) to review the final

determination of defendant Andrew M. Saul, the Commissioner of Social Security, that plaintiff

was not entitled to Supplemental Security Income ("SSI").  Before the court are the parties'

cross-motions for judgment on the pleadings [7, 8].[1] The parties have consented to my

jurisdiction [10].  Having reviewed the parties' submissions [7, 8, 9], the Commissioner's motion

is granted, and plaintiff's motion is denied.


## BACKGROUND

                The parties' familiarity with the 542 page administrative record is presumed.  In

May 2015 plaintiff filed an application for SSI,[2] alleging a disability onset date of March 21,

2015, due to osteopetrosis, "fractured both femur", "herniated discs", and "severe pain".

Administrative record [5], pp. 190, 240.  At the time of her application, plaintiff was 38 years old

and had a work history that included bus aide, cashier/customer service, certified nursing

---

[1]        Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page
references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[2]        I have used the date used by the parties, but the record appears to indicate that the application was
filed in September 2015. [5], p. 190.

assistant.  Id., pp. 190.  After the application was denied, an administrative hearing was

conducted before Administrative Law Judge ("ALJ") Lisa B. Martin on October 23, 2017, at

which plaintiff, who appeared with a representative, and Ray Berger, a vocational expert,

testified. Id., pp. 34-58.

At the hearing, plaintiff testified that she ceased working in October 2015, when

she injured her back lifting up a patient while working at an assisted living facility. Id., pp. 39-

41. According to plaintiff, she is able to stand for 15 minutes at a time before needing to sit down

and can sit for 15 to 20 minutes before needing to stand up. Id., pp. 48-49, 52.  At that point, She

also testified that she needs to lie down approximately twice a day for about 15 to 20 minutes.

Id., p. 49.  However, when asked if she believed that she could work a job where she would have

to sit for six hours and stand and walk for a total of two hours, she testified "I want to go back to

work so bad . . . . But at the end of the day it's like, I'm afraid.  You know, if I fall, I could

possibly be paralyzed. I have fractures in my lower back . . . I stress about this every day".  Id.,

p. 53.

The record contains the following relevant medical opinions concerning

plaintiff's functional limitations:

-- Shortly after her injury, plaintiff was seen by neurosurgeon Dr. Tobias Mattei

on September 15, 2015. Id., pp. 310-13. Dr. Mattei noted that her gait was intact and that her

lumbar spine range of motion was within normal limits. Id., p. 311.  Following review of an

EMG nerve conduction study and MRI,  Dr. Mattei opined on September 29, 2015 tthat no

neurosurgical intervention was necessary, and recommended that she seek a chiropractic

consultation, and if that was not helpful obtain a joint injection.  Additionally, he recommended

that plaintiff consult with "[p]hysiatry for long-term conservative management of her symptomatology". Id., p. 304;

      -- Michael Calabrese, M.D. examined plaintiff in October 27, 2015, and opined that she was unable to return to work for a week, and that upon her return with the restrictions of limited bending, stooping, and squatting. Id., p. 525. From November 2015 to March 2016, Dr. Calabrese opined that plaintiff was unable to return to work. Id., pp. 483, 489, 494, 504-05. However, by April 2016, Dr. Calabrese opined that plaintiff could return to sedentary work (id., pp. 477-78), and by June 2016, Dr. Calabrese opined that Plaintiff could return to work without restrictions. Id., p. 461. From July 2016 through June 2017, Dr. Calabrese opined that plaintiff was able to return to work with light duty restrictions. Id., pp. 387, 395, 417, 424, 430, 436, 447, 456;

      -- A November 30, 2015 opinion from consultative examiner Abrar Siddiqui, M.D., who diagnosed plaintiff with low back pain and opined that she had "mild to moderate limitations in the claimant's ability to climb, push, pull, or carry heavy objects". Id., p. 348;

      -- William Capicotto, M.D. examined Plaintiff in December 2015, found her totally, but temporarily, disabled, and recommended physical therapy. Id., p. 367. His opinion concerning plaintiff's disability and recommendation continued through August 2016, when he referred plaintiff to a spine surgeon, noting that any surgery would be difficult because of her osteopetrosis. Id., pp. 379-80;

      -- A February 24, 2016 opinion from Gerald Coniglio, M.D., who diagnosed plaintiff with low back pain secondary to sprain/strain of the lumbar spine. Id., p. 475. He opined that plaintiff was 50% temporarily disabled to a moderate degree, with the following limitations: lift 20 pounds occasionally from knee high level to table top level; occasionally

push, pull, turn and twist with a force of 20 pounds; may not climb ladders or restrain

hostile/uncooperative individuals; may only climb one flight of stairs; and may only walk 1/8[th] of

a mile on flat ground.  Id., p. 476;

   In October 2016 plaintiff began treating with Joseph Kowalski, M.D.  After

examining her in October and November 2016, Dr. Kowalski did not recommend surgery in

January 2017, explaining that:

> "Clinically, [plaintiff] hasn't mechanical back pain secondary to the
> spondylolysis from L1-L5 . . . . She has no real hard radiculopathy or deficits.
> The osteopetrosis is an underlying condition which was asymptomatic prior
> to the work injury.  She developed spondylolysis at L1, L2, L3, L4 and L5.
> Although she [has] a mild grade 1 spondylolisthesis of L5 at S1 but no gross
> instability or radiculopathy." Id., pp. 537-38.

   In May 2017, Dr. Kowalski observed  that plaintiff could stand from a seated

position "without difficulty", rise to heels and toes with "good strength", "[t]he major muscle

groups in the lower extremities are grossly intact and symmetric", "[s]traight leg raising causes

no change of her symptoms", and "[g]ait is reciprocal". Id., p. 541.  At that time, he

recommended physical therapy for core muscle strengthening. Id., p. 542.  Throughout, Dr.

Kowaslski found plaintiff 100% temporarily disabled. Id., pp. 536, 538, 542; and

   -- May 2, 2017 independent examination conducted by Joshua Auerbach, M.D.,

who diagnosed plaintiff with a "lumbar spine strain in the setting of a preexisting lumbar

spondylosis, spondylolisthesis and osteopetrosis". Id., p. 384. He also notes that "she reports

being asymptomatic with no treatment received until [a September 2, 2015] injury with no

significant pathology on MRI that certainly could explain her back pain". Id. Dr. Auerbach found

that plaintiff had attained "maximum medical improvement", and that she was able to perform

light duty work consistent with a moderate degree of disability.  Id. Specifically, he opined that

plaintiff should not lift greater than 20 pounds and avoid constant bending, stooping, twisting, or working on her hands and knees. Id.

Based upon the medical evidence and testimony, ALJ Martin found that plaintiff's severe impairments were "osteopetrosis, chronic pain secondary to bilateral pars defects of the lumbar spine at L2, L4, and L5, and history of remote femur fractures with residual symptoms". Id., p. 20. She concluded that plaintiff had the residual functional capacity ("RFC") to perform "a full range of light work", except that she was:

> "limited to 4 hours of standing and walking, the rest sitting, in an 8-hour workday. She needs the opportunity to change positions as often as every 30 minutes for 1 to 2 minutes. She is precluded from all ladders, ropes, and scaffolds climbing [sic], and is limited to occasional postural motions (climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling)." Id., p. 21.

In reaching that RFC, ALJ Martin gave:  "great" weight to the functional limitations assessed by Drs. Siddiqui, Calabrese and Auerbach; "partial" weight to the opinions of Drs. Capicotto and Kowalski that plaintiff had a 100% temporary disability because "they are conclusory, were rendered with the claimant's Workers' Compensation claim in mind, and do not have a clear corollary to Social Security Administration disability decisions"; and "partial" weight to the opinion of Dr. Coniglio, explaining that he "gives less weight to the restrictions regarding restraining individuals, climbing only one flight of stairs, and walking only one-eighth mile, insofar as Dr. Coniglio examined the claimant on only one occasion, and these restrictions are not echoed by the claimant's treating sources". Id., pp. 25-26.

ALJ Martin also found that plaintiff's "symptoms do not limit her activities to the extent alleged", explaining that

> "[d]espite the claimant's allegations, she is capable of performing a wide and varied range of activities of daily living.  She is the sole caregiver of her adolescent son, who has special needs.  She reports that she is able to

cook several times a week, showers regularly, and dresses herself daily.
She has indicated that she enjoys watching television . . . . In addition to her
activities of daily living . . . the treatment the claimant has received has been
generally routine and conservative. The claimant is not a good candidate for
surgery due to her osteopetrosis.  However, there are additional more invasive
treatments that the claimant has declined . . . . The claimant has also indicated
that physical therapy and medication are useful in alleviating her symptoms . . . .
Her physical examinations have generally shown normal strength . . . . [T]he
claimant reported desiring to return to work as early as June of 2016.  The record
does not reflect that she has required any treatment for her pain since June of 2017".
Id., p. 25.

Based upon the RFC and the vocational expert's testimony, ALJ Martin

determined that plaintiff was not capable of performing her past relevant work, but was able to

perform other jobs that exist in significant numbers in the national economy, and therefore was

not disabled from May 22, 2015.  Id., p. 28.

The Appeals Council found no basis to change ALJ Martin's decision. Id., pp. 1-

5. Thereafter, this action ensued.

## DISCUSSION

### A.    Standard of Review

"A district court may set aside the Commissioner's determination that a claimant

is not disabled only if the factual findings are not supported by 'substantial evidence' or if the

decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42

U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as

adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305

U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-

step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff

bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

Plaintiff argues that ALJ Martin's "RFC determination is a product of [her] lay judgment, and is not supported by substantial evidence". Plaintiff's Memorandum of Law [7-1], p. 1.  In particular, she contends that "it is not clear how the ALJ came to the conclusion that th[e] sitting, standing, and walking alternation pattern would be sufficient enough to permit [her] to perform light work". Id., pp. 17-18.


**B.      Did ALJ Martin, as a Layperson, Improperly Formulate the RFC?**

An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole". Matta v. Astrue, 508 Fed. App'x 53, 56 (2d Cir. 2013) (Summary Order).  However, in the absence of a competent medical opinion, an ALJ, as a layperson,  is generally "not qualified to assess a claimant's RFC on the basis of bare medical findings . . . . Thus, even though the Commissioner is empowered to make the RFC determination, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection himself." Perkins v. Berryhill, 2018 WL 3372964, *3 (W.D.N.Y. 2018). *See also* Goble v. Colvin, 2016 WL 3179901, *6 (W.D.N.Y. 2016) ("the ALJ's RFC determination must be supported by competent medical opinion; the ALJ is not free to form his own medical opinion based on the raw medical evidence"); Wilson v. Colvin, 2015 WL 1003933, *21 (W.D.N.Y. 2015) ("[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence"); Guttierez v. Berryhill, 2018 WL 3802015, *3 (W.D.N.Y. 2018); Dye v.

Commissioner of Social Security, 351 F. Supp. 3d 386, 390–91 (W.D.N.Y. 2019) ("an ALJ is not a medical professional, and is not qualified to assess a claimant's RFC on the basis of bare medical findings. . . . As a result, an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence").

 The record included medical opinions assessing plaintiff's functional limitations. ALJ Martin "was entitled to choose between properly submitted medical opinions and to consider other evidence of record in determining plaintiff's RFC." Eichelberger v. Saul, 2019 WL 4072752, *3 (W.D.N.Y. 2019). As the Commissioner argues, "with the exception of Dr. Coniglio's February 2016 opinion that Plaintiff could only walk 1/8th of a mile on flat ground . . . no physician limited Plaintiff's ability to walk or stand, let alone sit". Commissioner's Brief [8-1], p. 11. ALJ Martin gave limited weight to that opinion, and plaintiff does not dispute how ALJ Martin weighed the opinion evidence. Id., p. 59.

 None of the other five physicians who treated or examined plaintiff assessed her with any standing or sitting limitations or found that she needed to change positions. Although plaintiff argues that "not a single medical opinion within the evidence of record indicates the minimum or maximum time that Plaintiff is capable of sitting, standing, or walking if given an alternation pattern" (plaintiff's Memorandum of Law [7-1], p. 19), ALJ Martin was "entitled to rely not only on what the record says, but also on what it d[id] not say". Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983). See also Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir.1995) ("the ALJ relied on the fact that no examining physician . . . had indicated that plaintiff had difficulty sitting for a prolonged period of time . . . . Only the chiropractor had made a finding that plaintiff could not sit for prolonged periods of time . . . which the ALJ had the discretion to discount. Because the burden was on plaintiff to prove that she could not resume her work . . . it

was proper for the ALJ to rely on the absence of findings by any physician concerning plaintiff's alleged inability to sit for prolonged periods"). That is especially so here, where plaintiff made complaints of an inability to sit or stand for prolonged periods to the medical sources and they assessed no such restrictions.  For example, she repeatedly complained to Dr. Calabrese that she needed to change position while sitting or standing every 10-15 minutes ([5], p. 389, 412); yet, he did not assess her with any such restriction.

"It is well settled that an ALJ need not adopt one or more medical opinions verbatim in order to render a sufficiently-supported RFC determination".  Young v. Berryhill, 2018 WL 2752443, *2 (W.D.N.Y. 2018).  "The question is, instead, whether the ALJ's conclusion was 'supported by the record as a whole.'" Nieves v. Commissioner of Social Security, 2019 WL 4565112, *4 (S.D.N.Y. 2019) (quoting Tricarico v. Colvin, 681 Fed. App'x 98, 101 (2d Cir. 2017) (Summary Order)). See Butler v. Commissioner of Social Security, 2017 WL 2834482, *8 (N.D.N.Y. 2017) ("[i]t is well-recognized that the ALJ need not adopt any opinion in its entirety, but rather is entitled to weigh all the evidence and adopt the limitations supported by the evidence").

Absent from the record is any medical opinion that plaintiff needed to alternate positions or had any sitting or standing limitation whatsoever.  However, the fact that ALJ Martin found a basis to include such limitations that does not automatically require remand because it is "[u]ltimately . . . Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ".  Beaman, 2020 WL 473618 at *6.  Hence, "[w]here an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand". Yargeau v. Berryhill, 2018 WL 1335388, *3 (W.D.N.Y. 2018) (emphasis in original). See Castle v. Colvin, 2017 WL 3939362, *3 (W.D.N.Y. 2017) ("the fact that the ALJ's

RFC assessment did not perfectly match Dr. Balderman's opinion, and was in fact more restrictive than that opinion, is not grounds for remand"); Shorter v. Commissioner of Social Security, 2014 WL 1280459, *10 (N.D.N.Y. 2014) ("[i]n light of the other substantial evidence in the record supporting the ALJ's RFC determination and the fact that the RFC determination is actually more restrictive than Corwin's assessment, any error in considering this report was harmless").

   In any event, I find no error in ALJ Martin's RFC, which is supported by substantial evidence. "[W]hen the record contains at least some evidence of a specific limitation, the ALJ may appropriately reach a specific RFC incorporating that limitation." Heckman v. Commissioner of Social Security, 2019 WL 1492868, *4 (W.D.N.Y. 2019). Here, ALJ Martin formulated the RFC, in part, by partially accepting plaintiff's testimony that she was unable to sit for more than 15 to 20 minutes and stand for more than 15 minutes at a time. [4], pp. 49, 52. "A claimant's testimony is acceptable evidence to support the inclusion of a limitation in an RFC determination." Yargeau, 2018 WL 1335388 at *4.

   While plaintiff did testify to having more significant sitting and standing limitations than reflected in the RFC, plaintiff does not contest ALJ Martin's credibility determination which partially credited her allegations concerning the limiting effects of her symptoms. "In assessing Plaintiff's RFC, the ALJ was free to credit some of plaintiff's statements while discrediting others". Beaman v. Commissioner of Social Security, 2020 WL 473618, *6 (W.D.N.Y. 2020). See also Davis v. Colvin, 2017 WL 745866, *12 (W.D.N.Y. 2017) ("other than his own statements concerning his inability to stand for prolonged periods, which were discounted by the ALJ . . . Davis has failed to identify any record evidence that is inconsistent with the limitations assessed by the ALJ"); Baker o/b/o Baker v. Berryhill, 2018 WL

1173782, *3 (W.D.N.Y. 2018) ("[i]n essence . . . Plaintiff faults the ALJ for having accepted

Claimant's testimony that she was required to change positions after half an hour of sitting

because no medical source opined that she required a sit/stand option. The Court does not find

that this constitutes reversible error").

       In addition to plaintiff's testimony, ALJ Martin also considered the objective

medical evidence, plaintiff's treatment history, plaintiff's daily activities, and medical opinions

of record. Therefore, I conclude that the sitting, standing, and walking limitations assessed by

ALJ Martin were consistent with the record and supported by substantial evidence.  Similarly, in

McKillip v. Commissioner of Social Security, 2019 WL 5677595, *8 (W.D.N.Y. 2019), the

court concluded that the ALJ did not err in finding that the plaintiff could "only sit for thirty

minutes, stand for thirty minutes, or walk for thirty minutes at a time and would need to alternate

positions within those thirty-minute requirements", where the ALJ gave partial weight to a

medical opinion that plaintiff had moderate limitations in walking and standing, and partially

credited plaintiff's testimony "that she needs to alternate positions after sitting for 15-20 minutes

or standing for 10-15 minutes and can walk only one block before needing to rest". *See also*

Davis, 2017 WL 745866 at *11 (finding that the ALJ did not err by assessing a one-hour

standing limitation even though it did not precisely correspond to any medical opinion because

the plaintiff's daily activities, treatment history, and at least some of the medical evidence

supported that limitation); Palistrant v. Commissioner of Social Security, 2018 WL 4681622, *5

(W.D.N.Y. 2018) (same); Crosby v. Berryhill, 2017 WL 3065271, *3 (W.D.N.Y. 2017)

("although no medical source opined precisely that plaintiff needed to change positions every 45

minutes, the ALJ's RFC finding is supported by substantial evidence"). *But see* Harrington v.

Saul, 2019 WL 3945775, *3 (W.D.N.Y. 2019) (finding that the ALJ's RFC that the plaintiff "is

able to sit for 6 hours out of 8 hours" and "stand and walk in combination for 6 hours out of 8 hours" was the product of the  ALJ's own surmise, where there was no medical opinion concerning the plaintiff's capacity for sitting and standing and the RFC contradicted the plaintiff's testimony).

Plaintiff's reliance on Heckman, supra and Cosnyka v. Colvin, 576 Fed. App'x 43 (2d Cir. 2014) (plaintiff's Memorandum of Law [7-1], pp. 19-20) does not compel a different conclusion.  In Heckman, there was a medical opinion in the record, consistent with plaintiff's testimony, that directly contradicted the ALJ's determination that the plaintiff had the ability to sit for 60 minutes before standing up. 2019 WL 1492868 at *4. Likewise, in Cosnyka, the orthopedic examiner, concluded that the plaintiff required "regular comfort breaks". 576 Fed. Appx. at 46.  By contrast, here, there are no medical opinions in this record that required plaintiff to alternate between sitting and standing or had any sitting or standing limitation whatsoever.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [8] is granted, and plaintiff's motion [7] is denied.

 **SO ORDERED**.

Dated: July 31, 2020

 /s/Jeremiah J. McCarthy
 JEREMIAH J. MCCARTHY
 United States Magistrate Judge